**In the United States District Court**
**For the District of New Jersey, Newark**

---

David Pineda,

o*n behalf of himself and those similarly situated*,

         Plaintiff,

      v.

MSNF Foods 4 LLC; Massoud Ansari; Brian Lugo; Aaron Silverman; Doe Corporation 1-10; John Doe 1-10

         Defendants.

Case No.

Jury Demand Endorsed Hereon

---

**Class and Collective Action Complaint**

---

1.     David Pineda, on behalf of himself and similarly-situated individuals, brings this action against Defendants MSNF Foods 4 LLC; Massoud Ansari; Brian Lugo; Aaron Silverman; Doe Corporation 1-10, and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, New Jersey Minimum Wage Law ("NJMWL"), N.J. Stat. Ann. 12:56-6.1 *et seq.*, the New Jersey Wage Payment Law ("NJWPL"), New Jersey Wage and Hour Laws, N.J.S.A. 34:11-56a et seq. ("NJWHL"), and for unjust enrichment.

1

2.      Defendants Massoud Ansari, Brian Lugo, and Aaron Silverman, through various legal entities including, but not limited to, MSNF Foods 4, LLC, own and operate Domino's Pizza franchise stores ("Defendants' Domino's Pizza stores").

3.      Plaintiff and the delivery drivers who he seeks to represent are Defendants' delivery drivers.

4.      All delivery drivers at the Defendants' Domino's Pizza stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

**Jurisdiction and Venue**

5.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

6.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

**Plaintiff**

**David Pineda**

8.      Plaintiff David Pineda is a resident of New Jersey and worked for Defendants in Newton, New Jersey.

9.      Plaintiff is an "employee" of all Defendants as defined by the FLSA and New Jersey wage and hour laws.

2

10.    Plaintiff has given written consent to join this action.

**<u>Defendants</u>**

11.    Plaintiff seeks to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who acts or has acted directly or indirectly in the interest of the Defendants' Domino's Pizza stores in relation to Plaintiff and similarly situated delivery drivers.

12.    Defendants MSNF Foods 4 LLC, Massoud Ansari, Brian Lugo, and Aaron Silverman make up all or part of the organized group of persons who act or have acted directly or indirectly in the interest of the Defendants' Domino's Pizza stores in relation to Plaintiff and similarly situated delivery drivers.

13.    To the extent additional entities or individuals make up part of the organized group of persons who acts or have acted directly or indirectly in the interest of the Defendants' Domino's Pizza stores in relation to Plaintiff and similarly situated delivery drivers, Plaintiff seeks to hold those entities or individuals liable as "employers" for the violations alleged herein.

**MSNF Foods 4 LLC**

14.    Defendant MSNF Foods 4 LLC is a domestic limited liability company, registered and authorized to do business under the laws of the state of New Jersey, with its principal place of business at 415 State Route 9, Englishtown, NJ 07726.

15.    Upon information and believe MSNF Foods 4 LLC owns and operates Domino's Pizza stores in New Jersey.

3

16.     MSNF Foods 4 LLC is owned and operated by Massoud Ansari, Brian Lugo, and Aaron Silverman.

17.     MSNF Foods 4 LLC is one of the entities that has entered into a franchise agreement with Domino's to operate the Defendants' Domino's Pizza stores.

18.     MSNF Foods 4 LLC is the entity that appears on Plaintiff's paystubs for work he completes or has completed for Defendants.

19.     MSNF Foods 4 LLC commands where, when, and how much labor is performed by the delivery drivers at the Defendants' Domino's Pizza stores.

20.     MSNF Foods 4 LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.     Upon information and belief, MSNF Foods 4 LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

22.     MSNF Foods 4 LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

23.     At all relevant times, MSNF Foods 4 LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24. MSNF Foods 4 LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

25. At all relevant times, MSNF Foods 4 LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26. MSNF Foods 4 LLC's gross revenue exceeds $500,000 per year.

**Massoud Ansari**

27. Massoud Ansari is an owner of MSNF Foods 4 LLC, and other entities involved in the operation of Defendants' Domino's Pizza stores.

28. Upon information and belief, Massoud Ansari is a person who has entered into a franchise agreement with Domino's to operate the Defendants' Domino's Pizza stores.

29. Upon information and belief, Massoud Ansari is the president of MSNF Foods 4 LLC, and other entities involved in the operation of Defendants' Domino's Pizza stores.

30. Massoud Ansari may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Domino's Pizza stores.

31. Massoud Ansari is individually liable to the Defendants' Domino's Pizza stores' delivery drivers under the definitions of "employer" set forth in the FLSA and New Jersey law because he owns and operates the Defendants' Domino's Pizza stores, serves as a manager of MSNF Foods 4 LLC and the other entities involved in the operation of Defendants' Domino's Pizza stores, ultimately controls significant aspects of the Defendants' Domino's Pizza stores' day-

5

to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

32.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had financial control over the operations at each of the Defendants' Domino's Pizza stores.

33.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has a role in significant aspects of the Defendants' Domino's Pizza stores' day to day operations.

34.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had control over the Defendants' Domino's Pizza stores' pay policies.

35.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had power over personnel and payroll decisions at the Defendants' Domino's Pizza stores, including but not limited to influence of delivery driver pay.

36.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Domino's Pizza stores.

37.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's Pizza stores.

6

38.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had the power to transfer the assets and liabilities of the Defendants' Domino's Pizza stores.

39.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had the power to declare bankruptcy on behalf of the Defendants' Domino's Pizza stores.

40.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had the power to enter into contracts on behalf of each of the Defendants' Domino's Pizza stores.

41.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari has had the power to close, shut down, and/or sell each of the Defendants' Domino's Pizza stores.

42.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Massoud Ansari had authority over the overall direction of each of Defendants' Domino's Pizza stores and was ultimately responsible for their operations.

43.     The Defendants' Domino's Pizza stores function for Massoud Ansari's profit.

44.     Massoud Ansari has influence over how the Defendants' Domino's Pizza stores can run more profitably and efficiently.

45.     Upon information and belief, Massoud Ansari owns, operates, and control other entities and/or limited liability companies that also comprise part of the Defendants' Domino's

Pizza stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's Pizza stores as that term is defined by the FLSA and state wage and hour laws.

46.     Upon information and belief, Massoud Ansari owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' operation.

47.     Upon information and belief, Defendants' Domino's Pizza stores, and other entities owned or operated in whole or in part by Massoud Ansari may be liable for the claims asserted here.

48.     Upon information and belief, the franchisor, Domino's, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's Pizza stores.

49.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's Pizza stores as that term is defined by the FLSA and state wage and hour laws.

50.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Brian Lugo**

51.     Upon information and belief, Brian Lugo is an owner of MSNF Foods 4 LLC, and other entities involved in the operation of Defendants' Domino's Pizza stores.

52.     Upon information and belief, Brian Lugo is a person who has entered into a franchise agreement with Domino's to operate the Defendants' Domino's Pizza stores.

53.     Brian Lugo may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Domino's Pizza stores.

8

54.    Brian Lugo is individually liable to the Defendants' Domino's Pizza stores' delivery drivers under the definitions of "employer" set forth in the FLSA and New Jersey law because he owns and operates the Defendants' Domino's Pizza stores, serves as a manager of MSNF Foods 4 LLC and the other entities involved in the operation of Defendants' Domino's Pizza stores, ultimately controls significant aspects of the Defendants' Domino's Pizza stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

55.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had financial control over the operations at each of the Defendants' Domino's Pizza stores.

56.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has a role in significant aspects of the Defendants' Domino's Pizza stores' day to day operations.

57.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had control over the Defendants' Domino's Pizza stores' pay policies.

58.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had power over personnel and payroll decisions at the Defendants' Domino's Pizza stores, including but not limited to influence of delivery driver pay.

59.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Domino's Pizza stores.

9

60.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Domino's Pizza stores.

61.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had the power to transfer the assets and liabilities of the Defendants' Domino's Pizza stores.

62.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had the power to declare bankruptcy on behalf of the Defendants' Domino's Pizza stores.

63.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had the power to enter into contracts on behalf of each of the Defendants' Domino's Pizza stores.

64.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had the power to close, shut down, and/or sell each of the Defendants' Domino's Pizza stores.

65.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Brian Lugo has had authority over the overall direction of each of Defendants' Domino's Pizza stores and is ultimately responsible for their operations.

66.     The Defendants' Domino's Pizza stores function for Brian Lugo's profit.

67.     Brian Lugo has influence over how the Defendants' Domino's Pizza stores can run more profitably and efficiently.

10

68.     Upon information and belief, Brian Lugo owns, operates, and controls other entities and/or limited liability companies that also comprise part of the Defendants' Domino's Pizza stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's Pizza stores as that term is defined by the FLSA and state wage and hour laws.

69.     Upon information and belief, Brian Lugo owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' operation.

70.     Upon information and belief, MSNF Foods LLC, and other entities owned or operated in whole or in part by Brian Lugo may be liable for the claims asserted here.

71.     Upon information and belief, the franchisor, Domino's, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's Pizza stores.

72.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's Pizza stores as that term is defined by the FLSA and state wage and hour laws.

73.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Aaron Silverman**

74.     Upon information and belief, Aaron Silverman is an owner of MSNF Foods 4 LLC, and other entities involved in the operation of Defendants' Domino's Pizza stores.

75.     Upon information and belief, Aaron Silverman is a person who has entered into a franchise agreement with Domino's to operate the Defendants' Domino's Pizza stores.

76.     Aaron Silverman may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Domino's Pizza stores.

77.     Aaron Silverman is individually liable to the Defendants' Domino's Pizza stores' delivery drivers under the definitions of "employer" set forth in the FLSA and New Jersey law because he owns and operates the Defendants' Domino's Pizza stores, serves as a manager of MSNF Foods 4 LLC and the other entities involved in the operation of Defendants' Domino's Pizza stores, ultimately controls significant aspects of the Defendants' Domino's Pizza stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

78.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had financial control over the operations at each of the Defendants' Domino's Pizza stores.

79.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has a role in significant aspects of the Defendants' Domino's Pizza stores' day to day operations.

80.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had control over the Defendants' Domino's Pizza stores' pay policies.

81.     At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had power over personnel and payroll decisions at the Defendants' Domino's Pizza stores, including but not limited to influence of delivery driver pay.

12

82.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Domino's Pizza stores.

83.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's Pizza stores.

84.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had the power to transfer the assets and liabilities of the Defendants' Domino's Pizza stores.

85.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had the power to declare bankruptcy on behalf of the Defendants' Domino's Pizza stores.

86.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had the power to enter into contracts on behalf of each of the Defendants' Domino's Pizza stores.

87.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had the power to close, shut down, and/or sell each of the Defendants' Domino's Pizza stores.

88.    At all relevant times, by virtue of his role as an owner of Defendants' Domino's Pizza stores, Aaron Silverman has had authority over the overall direction of each of Defendants' Domino's Pizza stores and is ultimately responsible for their operations.

13

89. The Defendants' Domino's Pizza stores function for Aaron Silverman's profit.

90. Aaron Silverman has influence over how the Defendants' Domino's Pizza stores can run more profitably and efficiently.

91. Upon information and belief, Aaron Silverman owns, operates, and controls other entities and/or limited liability companies that also comprise part of the Defendants' Domino's Pizza stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's Pizza stores as that term is defined by the FLSA and state wage and hour laws.

92. Upon information and belief, Aaron Silverman owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' operation.

93. Upon information and belief, Defendants' Domino's Pizza stores, and other entities owned or operated in whole or in part by Aaron Silverman may be liable for the claims asserted here.

94. Upon information and belief, the franchisor, Domino's, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's Pizza stores.

95. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's Pizza stores as that term is defined by the FLSA and state wage and hour laws.

96. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe Corp. 1-10**

97. Upon information and belief, Defendants own and operate other entities and/or

14

limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and state law.

98.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe Individuals 1-10**

99.     Upon information, there are other Defendants who own an interest and/or have operational control over the Defendants' Domino's stores that also qualify as Plaintiff's "employer" under the FLSA and state law.

100.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

101.     During all relevant times, Defendants have operated the Defendants' Domino's Pizza stores.

102.     The primary function of Defendants' Domino's stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

103.     All delivery drivers employed at the Defendants' Domino's stores over the last six years have had essentially the same job duties—deliver pizza and other food items to customers and complete various tasks inside the restaurant when they were not delivering pizzas.

104.    All of the Defendants' Domino's delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped

105.    The Defendants' Domino's delivery drivers' non-tipped job duties were not related to their tipped job duties.

106.    The Defendants' Domino's delivery drivers' tipped job duties were not completed contemporaneously with their non-tipped job duties.

107.    The Defendants' Domino's delivery drivers' inside job duties included but were not limited to, folding boxes, doing dishes, stocking, mopping and sweeping the floor, taking the trash out, preparing food, and completing any other tasks necessary for the operation of the restaurant.

108.    The Defendants' Domino's delivery drivers have been paid a tipped wage rate for hours worked on the road making deliveries.

109.    The Defendants' Domino's delivery drivers have been paid at or close to minimum wage for the hours they worked inside the store.

110.    Defendants regularly change the pay category of Plaintiff and the delivery drivers to the lower on-the-road rate while Plaintiff and the other delivery drivers are still in the store, completing their "inside duties" while they are waiting for their delivery order to be prepared or until another delivery driver returns to the store.

111.    Upon information and belief, store managers are engaging in this practice in order to meet metrics set by Defendants, which includes pizzas leaving the store within 13 minutes

16

from when the order is placed.

112. Plaintiff and the delivery drivers should stay at the higher "inside" pay rate until the order is ready to be taken out for delivery.

113. Defendants require delivery drivers at Defendants' Domino's Pizza stores to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

114. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

115. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, storage costs, cell phone costs, data charges, and other equipment necessary for delivery drivers to complete their job duties.

116. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase vehicles, gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, incur storage charges, and incur cell phone and data charges all for the primary benefit of Defendants.

117. Defendants reimbursed their delivery drivers on either a per-delivery or per-mile basis that was not sufficient to cover all of the delivery drivers' expenses.

17

118.    Defendants' Domino's stores do not track or maintain records of the actual expenses of the delivery drivers.

119.    Defendants' Domino's Pizza stores do not reimburse delivery drivers for their actual expenses.

120.    Defendants' Domino's Pizza stores do not reimburse delivery drivers for their actual vehicle-related expenses in the work week when the expenses are incurred.

121.    Defendants' Domino's Pizza stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

122.    Defendants' Domino's Pizza stores do not reimburse delivery drivers at the IRS standard business mileage rate.

123.    Defendants' Domino's Pizza stores have not reimbursed delivery drivers at a reasonable approximation of the drivers' expenses.

124.    The Defendants' Domino's Pizza stores' reimbursement methodology does not fully reimburse delivery drivers for their expenses.

125.    The Defendants' Domino's stores did not keep adequate records of the methodology and data they relied upon in determining their reimbursement rates.

126.    The Defendants' Domino's Pizza stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

127.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been, for example:

    a.    2019: 58 cents/mile

18

      b.      2020: 57.5 cents/mile
      c.      2021: 56 cents/mile
      d.      January to June 2022: 58.5 cents/mile
      e.      July to December 2022: 62.5 cents/mile
      f.      2023: 65.5 cents/mile
      g.      2024: 67 cents/mile
      h.      2025: 70 cents/mile

128.    During some or all of the relevant time period, the delivery drivers at the Defendants' Domino's Pizza stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g*., cell phone and data charges.

129.    Given the nature of the driving being completed by pizza delivery drivers, the delivery drivers at the Defendants' Domino's Pizza stores incur more in expenses than an average driver. For example, very little of their driving is highway driving, they are turning their car off and on frequently, they are starting and stopping frequently, and they are transporting a fragrant and potentially messy product.

130.    The delivery drivers at the Defendants' Domino's Pizza stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

131.    Defendants reimburse their delivery drivers amounts less than they would have had to pay if they had rented vehicles each day to use to make deliveries.

132.    Defendants reimburse their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

133.    Defendants benefit from the delivery drivers at the Defendants' Domino's Pizza stores spending time off the clock repairing and maintaining their vehicles.

134.    Defendants benefit from delivery drivers at the Defendants' Domino's Pizza stores taking on the risk of using their vehicles to drive for Defendants' business.

135.    Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

136.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and state law.

137.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's Pizza stores.

138.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

139.    Defendants have willfully failed to pay federal and state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's Pizza stores and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

**Plaintiff's Individual Factual Allegations**

140.    Plaintiff has worked at Defendants' Domino's store located in Newton, New Jersey since March 2024.

141.    Plaintiff works dual jobs - one where he delivered food and received tips, and another where he worked inside the store completing non-tipped duties.

20

142.    Plaintiff was paid a "tipped" minimum wage, *i.e.*, less than minimum wage, for the hours he worked on the road completing deliveries

143.    Plaintiff was paid $6.00 per hour for the hours he worked on the road making deliveries.

144.    Plaintiff was paid New Jersey minimum wage for the hours he worked inside the store.

145.    Plaintiff's inside duties are not related to his delivery duties.

146.    Plaintiff's inside duties were not completed contemporaneously with his delivery duties.

147.    Plaintiff's inside job duties included cleaning, preparing food, folding pizza boxes, sweeping, and completing other duties inside the restaurant as necessary.

148.    Plaintiff is required to use his own car to deliver pizzas.

149.    Plaintiff is required to use his own cell phone when delivering pizzas.

150.    Plaintiff was reimbursed approximately $1.75 per delivery.

151.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

152.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

21

153.    Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of the Defendants.

154.    Defendants do not track the actual expenses incurred by Plaintiff.

155.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

156.    Defendants have not reimbursed Plaintiff for the purchase price of his car.

157.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries for Defendants.

158.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Plaintiff.

159.    During Plaintiff's employment with Defendants, Defendants have failed to adequately reimburse Plaintiff for automobile and job-related expenses.

160.    Plaintiff regularly completed approximately 2 deliveries per hour during the hours he worked on the road making deliveries.

161.    Plaintiff regularly drove approximately 15 miles per delivery.

162.    At 15 miles per delivery, this amounts to a reimbursement to Plaintiff of approximately $0.117 per mile when he completed a single delivery per run.

163.    In 2024, for example, the IRS business mileage reimbursement was $.67 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas.

http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, every mile driven on the job, decreased Plaintiff's net wages by approximately $0.553 ($0.67-$0.117) per mile. Considering his estimate of about 15 miles per delivery, Defendants under-reimbursed Plaintiff about $8.295 per delivery ($0.553 x 15 miles).

164.    Therefore, while making deliveries (assuming 2 deliveries per hour), Plaintiff has "kicked back" to Defendants approximately $16.59 per hour ($8.295 per delivery x 2 deliveries per hour).

165.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

166.    Defendants did not properly claim a tip credit for Plaintiff's wages because they did not actually pay him the wages they promised they would pay him, after deducting for automobile expenses.

167.    Plaintiff did not authorize Defendants to deduct a portion of his wages to cover automobile expenses that served Defendants' benefit.

168.    Defendants have failed to pay Plaintiff minimum wage as required by law.

## Collective Action Allegations

169.    Plaintiff brings the First and Second Counts on behalf of himself and

All similarly situated current and former delivery drivers employed at the Defendants' Domino's Pizza stores nationwide at any time during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter who elect to opt-in to this action (the "FLSA Collective").

23

170.    At all relevant times, Plaintiff and the FLSA collective class have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA collective class minimum wages for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA collective class.

171.    Defendants' unlawful conduct is pursuant to a company policy or practice.

172.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and time and a half overtime wages for hours worked in excess of 40 hours per week.

173.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

174.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

175.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

176.    The members of the FLSA Collectives are readily identifiable and ascertainable.

177.    For the purpose of notice and other purposes related to this action, the FLSA collective class members' names and contact information are readily available from Defendants' records.

178.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA collective class, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

179.    Plaintiff brings the Third, Fourth and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All similarly situated current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in New Jersey at any time during the six years prior to the filing of this Class Action Complaint and the date of final judgment in this matter.

180.    The Rule 23 class asserts NJMWL claims, NJWPL claims, and a claim for unjust enrichment on behalf of delivery drivers employed at Defendants' Domino's stores in New Jersey from the date six years prior to the filing of the original complaint through the date of final judgment.

181.    The Rule 23 class asserts a claim for unjust enrichment on behalf of delivery drivers employed at Defendants' Domino's stores in New Jersey from the date six years prior to the filing of the original complaint through the date of final judgment.

182.    Excluded from the Rule 23 class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 class.

25

183. The number and identity of the Rule 23 class members are ascertainable from Defendants' records.

184. The hours assigned and worked, the positions held, deliveries completed, miles driven, and the rates of pay and reimbursements paid for each member of the Rule 23 class are determinable from Defendants' records.

185. For the purposes of notice, and other purposes related to this action, the names and contact information of the Rule 23 class members are readily available from Defendants.

186. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

187. The members of the Rule 23 class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

188. There are more than 50 members of the Rule 23 class.

189. Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 class, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 class in separate actions.

190. Plaintiff and the members of the Rule 23 class are subject to the same corporate practices of Defendants, as alleged herein: failing to pay minimum wage, failing to properly claim a tip credit, failing to pay overtime, failing to reimburse for expenses, taking unauthorized deductions, failing to pay earned wages, and being unjustly enriched by their automobile policy.

191. Plaintiff and the Rule 23 class members have all sustained similar types of damages as a result of Defendants' failure to comply with state wage and common law.

26

192.    Plaintiff and the Rule 23 class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each of the Rule 23 class members.

193.    Plaintiff and the members of the Rule 23 class have all sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

194.    Plaintiff is able to fairly and adequately protect the interests of Rule 23 class and has no interests antagonistic to the Rule 23 class.

195.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

196.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or

impossible for the individual Rule 23 class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action.

197.    Upon information and belief, Defendants and other employers throughout the state violate New Jersey wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

198.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

199.    Common questions of law and fact exist as to the Rule 23 classes that predominate over any questions only affecting Plaintiff and the members of the Rule 23 classes individually and include, but are not limited to:

     a.  Whether Defendants paid Plaintiff and the Rule 23 class members at the proper minimum wage for all hours worked;

     b.  Whether Defendants required Plaintiff and the Rule 23 Class members to drive their own cars for work;

     c.  Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiff and the Rule 23 class members' wages to drop below legally allowable minimum wage and overtime;

d.  Whether Defendants reimbursed Plaintiff and the Rule 23 class members at the IRS standard business mileage rate for the miles they drove completing deliveries for Defendants;

e.  Whether Defendants recorded Plaintiff and the Rule 23 class members' actual expenses;

f.  Whether Defendants' reimbursement methodology reasonably approximated the automobile expenses of Plaintiff and the Rule 23 class members;

g.  Whether Defendants properly compensated Plaintiff and the Rule 23 class for hours worked in excess of 40 each workweek;

h.  Whether Defendants took deductions from the wages paid to Plaintiff and the Rule 23 class without authorization;

i.  Whether Defendants paid Plaintiff and the Rule 23 class all wages due;

j.  Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

k.  The nature and extent of class-wide injury and the measure of damages for those injuries.

200.  In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 class he seeks to represent, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action
## Count 1
## Failure to Pay Minimum Wages - Fair Labor Standards Act
## (On Behalf of Plaintiff and the FLSA Collective)

201.  Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

202.    Plaintiff and the FLSA collective class members are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

203.    Plaintiff and the FLSA collective class members worked in dual jobs—one that produced tips, and another that did not.

204.    Defendants paid Plaintiff and the FLSA collective class members at, close to, or below (based on tip credit) minimum wage for hours worked on the road making deliveries.

205.    Defendants required and continue to require Plaintiff and the FLSA collective class members to pay for automobile expenses and other job-related expenses out of pocket, and fail to properly reimburse the FLSA Collective for said expenses.

206.    Defendants have failed to properly claim a tip credit from their wages, because they did not pay the wage rate they promised they would pay.

207.    Defendants did not reimburse Plaintiff and the FLSA collective class members the purchase price of their cars,  for parts, for maintenance or repair costs, for gas, for storage, for damage to the car, for diminution in value of the car, or for the time it took Plaintiff and the FLSA collective class to maintain their vehicles.

208.    Defendants reimbursed Plaintiff and the FLSA collective class members using a per-delivery reimbursement rate that failed to cover all of the delivery drivers' vehicle expenses.

209.    As a result of the un- or under-reimbursed expenses incurred by Plaintiff and the FLSA collective class members, Defendants did not pay Plaintiff and the FLSA collective class members' wages free and clear.

210.    Plaintiff and the FLSA collective class members have been damaged by Defendants' willful failure to pay minimum wage and overtime as required by law.

211.    As a result of Defendants' willful violations, Plaintiff and the FLSA collective class members are entitled to damages, including, but not limited to, unpaid minimum wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**<u>Count 2</u>**
**Failure to Pay Overtime Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

212.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

213.    Plaintiff and the FLSA collective class members are or were non-exempt, hourly employees entitled to receive no less than time and a half overtime wages for hours worked in excess of 40 hours per week.

214.    Defendants required and continue to require Plaintiff and the FLSA collective class members to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA collective class members for said expenses.

215.    When Plaintiff and the FLSA collective class members worked overtime hours, they were under-reimbursed in the same way and according to the same policies as they were when they worked regular hours.

216.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA collective class members.

217.    Plaintiff and the FLSA collective class members have been damaged by Defendants' willful failure to pay overtime as required by law.

218.    As a result of Defendants' willful violations, Plaintiff and the FLSA collective class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages – New Jersey Minimum Wage Law,**
**N.J.S.A. § 34:11-56a, *et seq*.**
**(On Behalf of Plaintiff and the Rule 23 Class)**

219.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

220.    At all times relevant, Plaintiff and the Rule 23 class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 class as defined by the NJMWL and supporting regulations.

221.    Defendants are required to pay Plaintiff and the Rule 23 class minimum wage as required by N.J.S.A. § 34:11-56a et seq. and the supporting regulations.

222.    Defendants failed to pay Plaintiff and the Rule 23 class the minimum hourly wages to which they were entitled under the NJMWL.

223.    Defendants took unauthorized deduction from the wages of Plaintiff and the Rule 23 class.

224.    Defendants' conduct and practices described herein were willful and intentional.

225.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the delivery drivers for unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for all violations that occurred within the six years preceding the filing of this Complaint.

### Count 4
**Failure to Timely Pay Wages – New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.2**
**(On Behalf of Plaintiff and the Rule 23 Class)**

226.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

227.    At all times relevant, Plaintiff and the Rule 23 class have been employees of Defendants, and Defendants have been employers of Plaintiff and the c Rule 23 lass as defined by the NJWPL and supporting regulations.

228.    Defendants are required to pay Plaintiff and the Rule 23 class all wages due to them at least twice per month during each calendar month as required by N.J.S.A. § 34:11-4.2.

229.    Defendants failed to pay Plaintiff and the Rule 23 class members the wages they are due in a timely manner as required by the NJWPL.

230.    Defendants are prohibited from withholding or diverting the wages of Plaintiff and the Rule 23 class to cover automobile expenses as required by N.J.S.A § 34:11-4.4.

231.    Due to Defendants' violations of the MJWPL, Plaintiff and the Rule 23 class are entitled to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the six years preceding the filing of this complaint.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Class)**

232.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

233.    Plaintiff and the Rule 23 class members have conferred a benefit on Defendants by using their own cars and related equipment to perform work for Defendants.

234.    Defendants are aware of and have accepted the benefit conferred on them by Plaintiff and the Rule 23 class members.

235.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Plaintiff and Rule 23 class members without commensurate compensation.

236.    Plaintiff and the Rule 23 class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the six years preceding the filing of the original complaint and the date of final judgment in this matter.

**WHEREFORE**, Plaintiff prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

34

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Class.

E.      A declaratory judgment that the practices complained of herein are unlawful under state and federal law.

F.      An award of unpaid minimum wages and unreimbursed expenses due under the NJMWL and NJWPL.

G.      An award of restitution as a result of unjust enrichment.

H.      A declaratory judgment that Defendants' delivery drivers must be reimbursed for the actual costs of their delivery-related expenses, with associated recordkeeping, or at the IRS standard business mileage rate for each mile driven.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

*s/ Evan L. Goldman*

Evan L. Goldman, Esq.
New Jersey Bar No. 011871979
Goldman Davis Krumholz & Dillon, P.C.
3 University Plaza Drive
Hackensack, NJ 07601
201-488-2600

35

egoldman@goldmandavis.com

and

Andrew Biller (Pro Hac Vice Application forthcoming)
Andrew Kimble (Pro Hac Vice Application forthcoming)
Laura Farmwald (Pro Hac Vice Application forthcoming)
Emily Hubbard (Pro Hac Vice Application forthcoming)
Biller & Kimbler LLC
8044 Montgomery Rd, Suite 515
Cincinnati, Ohio 45236
513-202-0710 (Phone)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

s/ *Evan L. Goldman*
Evan L. Goldman, Esq.
New Jersey Bar No. 011871979
Goldman Davis Krumholz & Dillon, P.C.
3 University Plaza Drive
Hackensack, NJ 07601
201-488-2600

36